IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-CV-1644-EWN-BNB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

4685 HARRISON AVENUE, BOULDER, COLORADO;

US BANK ACCOUNT;

CONTENTS OF SAFE DEPOSIT BOX;

JANUS ACCOUNTS; and

T.D. WATERHOUSE ACCOUNT;

        Defendants.

---

## VERIFIED COMPLAINT FOR FORFEITURE IN REM (REDACTED)

---

The United States of America, by and through United States Attorney William J. Leone and Assistant United States Attorney James S. Russell, pursuant to Supplemental Rules for Admiralty and Maritime Claims C(2), states:

### JURISDICTION AND VENUE

1.    The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. §881 and §981, seeking forfeiture of the defendant property based upon violations of 21 U.S.C. §801 et seq and 18 U.S.C. §1956. This Court has jurisdiction under 28 U.S.C. §§1345 and 1355.

2.    Venue is proper under 21 U.S.C. §881 (j), 19 U.S.C. §1605 and 28 U.S.C. §1395,

as the defendant properties are located, and most of the acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is more fully as follows:

a. Lot 14, Block 1, Arapahoe Ridge Filing No. 3, City of Boulder, County of Boulder, State of Colorado, also known as 4685 Harrison Avenue, Boulder, Colorado, titled in the name of Daniel Chomyn and encumbered with a Deed of Trust in the principal amount of $300,000 for the benefit of Fieldstone Mortgage Company (defendant Harrison Avenue). At this time the United States recognizes the validity of the Deed of Trust;

b. all monies, assets, or other interest located at US Bank, 1600 28th Street, Boulder, Colorado in the name of or for the benefit of Daniel Chomyn, including but not limited to account #XXXXXXXX7616 (defendant US Bank account);

c. contents of Safe Deposit Box #XXXXXXXX867-2, located at US Bank, 1600 28th Street, Boulder, Colorado, in the name of or for the benefit of Daniel Chomyn (defendant US Bank safe deposit box);

d. all monies, assets, funds on deposit with Janus, located at 151 Detroit Street, Denver, Colorado 80206, in the name of or for the benefit of Daniel Chomyn, including but not limited to account #XX4197 and account #XXXXXX9154 (defendant Janus accounts);

e. all monies, assets, funds on deposit with T.D. Waterhouse, located at 724 17th Street, Denver, Colorado, in the name of or for the benefit of Daniel Chomyn,

2

including but not limited to account #XXXXX8419 (defendant Waterhouse account).

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

4.      Beginning in 2002, agents of the Drug Enforcement Administration-Albuquerque New Mexico District Office (DEA-Albuquerque) began receiving information that the Jarvis Drug Trafficking Organization was heavily involved in a large scale marijuana distribution organization operating from New Mexico and Arizona.  The DEA investigation has revealed that Dana Jarvis is the head of the organization and Daniel Chomyn is in charge of a cell operating in the Denver, Colorado area.  Jarvis is known to have at least 5 different money courier teams that pick up drug proceeds throughout the United States and transport them back to Santa Fe, New Mexico and Tucson, Arizona.  All teams rotate trips and are not assigned to one geographic region.  The Jarvis Drug Trafficking Organization pays the couriers 3% for pickups from the East Coast and 1 to 2% for pickups from the Denver/Boulder region.  In addition couriers receive a bonus of $2,500 cash or 1/4 pound of marijuana for each job that is completed.  Each courier is only allowed to store one million dollars at a time for the Jarvis organization because they are worried about seizures by law enforcement.

5.      In August of 2003, the Drug Enforcement Administration- Denver Division received information from a Confidential Source (CS) that Stanley Louis Birch was a large scale marijuana and cocaine trafficker, and was distributing 500 to 1,000 pounds of marijuana and

3

kilogram quantities of cocaine in the Denver, Colorado area. The CS had purchased kilogram quantities of cocaine from Birch. The CS told agents that Birch had two previous federal drug convictions. Agents confirmed that Birch had two federal convictions for drug violations in 1986 and 1990. The CS agreed to meet with Birch on December 8, 2003 to purchase 1/2 kilogram of cocaine for $11,000, for which the CS would pay Birch at a later date. The CS met with Birch in a parking lot in Denver, Colorado and Birch gave the CS a brown bag which contained the 1/2 kilogram of cocaine. Stanley Birch was subsequently charged by criminal complaint with possession with the intent to distribute and distribution of cocaine, and was arrested in California on March 2, 2004. Stanley Birch was then indicted in the District of Colorado, Case No. 04-CR-116, pleaded guilty, was sentenced to 7 1/2 years, and is currently serving his term of imprisonment for those charges. As part of the investigation, the Internal Revenue Service executed a federal seizure warrant and seized $29,000 from Stanley Birch's father. Stanley Birch had admitted to law enforcement that the money being held by his father was from his illegal drug trafficking, and the money was administratively forfeited by the Internal Revenue Service.

6.  In April of 2004, Birch indicated to law enforcement that since 1997 Dan Chomyn had been one of his sources of supply for marijuana. According to Birch, Chomyn received high quality marijuana from Tucson, Arizona for which Birch paid Chomyn $1,100 per pound, and purchased approximately 1,000 pounds per year. Birch said that Chomyn lives in Boulder, Colorado, drives a blue SUV, and uses cell phone number 303-817-4080. Colorado Department of Motor Vehicles records confirm that Daniel Chomyn owns a Blue Ford Explorer, and Verizon Wireless records confirm that that cell phone number belongs to Dan Chomyn at 4685 Harrison

Avenue, Boulder, Colorado (defendant Harrison Avenue). Birch also positively identified Dan Chomyn from a motor vehicle photograph. Birch went on to tell law enforcement that he would meet Chomyn at his house in Boulder (defendant Harrison Avenue) to make the marijuana purchases. According to Birch Chomyn stored the marijuana in the garage of defendant Harrison Avenue in large canvas duffle bags. Chomyn received van loads of marijuana from Tucson, Arizona, and Birch described the marijuana as high quality "pillows". According to Birch, Chomyn had no job other than being a drug dealer.

      7.     In 2004, another Confidential Source (CS#1) provided more information to agents of the Drug Enforcement Administration regarding the Jarvis Drug Trafficking Organization and Dan Chomyn. CS#1 told agents that during the summer of 2000 he was introduced to Dana Jarvis at a Santa Fe nightclub. Jarvis told the CS that his drug trafficking organization may want the CS to do small tasks for the organization. CS#1 told agents that during 2000 and 2001 he performed mostly surveillance task for the Jarvis Drug Trafficking Organization and was paid $500 to $1000 per task. Sometime in 2001 CS#1 was contacted to meet with Jarvis in Dorado, New Mexico, where a couple of unknown males were loading duffel bags into the back of the car. Jarvis instructed CS#1 to pick up money from Dan in Boulder, Colorado and return it to Jarvis in El Dorado, New Mexico. Jarvis told CS#1 that the money would be bundled in $5,000 increments and that CS#1 should do a quick count of the money before leaving. CS#1 then met with Dan Chomyn at a hotel in Boulder, Colorado, where he received a suitcase full of money from Dan Chomyn; CS#1 estimated the amount of currency to be $250,000. CS#1 returned to New Mexico, contacted Jarvis, delivered the money to Jarvis, and was paid $9,000 for the trip. CS#1 told agents that he became a bulk drug money courier, or "mule", for the Jarvis Drug

Trafficking Organization and in a 1 1/2 year period, he transported an estimated 10 million dollars for the Jarvis Drug Trafficking Organization. CS#1 also said that the money that was picked up ranged in amounts from $250,000 to $750,000 and would be delivered to various residences in Santa Fe, New Mexico. On several occasions CS#1 personally saw members of the Jarvis Drug Trafficking Organization loading large duffle bags of marijuana into the trunks of vehicles.

8. CS#1 continued to pick up multiple money shipments for the Jarvis Drug Trafficking Organization in Boulder, Colorado from Dan Chomyn. CS#1 has seen millions of dollars of drug cash proceeds in Chomyn's house (defendant Harrison Avenue). CS#1 said that "mules" would deliver loads of marijuana from Tucson, Arizona to Chomyn's house in Boulder (defendant Harrison Avenue), store it in the garage, and then take the cash back to the Jarvis Drug Trafficking organization. CS#1 knew that one of the "mules" named "Rafael" delivered approximately 500 pounds of marijuana two to three times per month to Chomyn's house (defendant Harrison Avenue). The "mules" are paid approximately $10 to $15 per pound of marijuana transported. Chomyn sends approximately $500,000 per month to the Jarvis Drug Trafficking Organization. CS#1 told agents that two money pickups from Chomyn's house would take place each month and they would be $250,000 per pickup. The money would generally be wrapped in $5,000 bundles and placed in duffle bags.

9. CS#1 told agents that Chomyn's drug associate/partner (Stanley Birch) was arrested in Colorado on drug charges in 2003 or 2004, and during that time, Chomyn temporarily stopped distributing drugs for fear of discovery by law enforcement. In 2004, Chomyn told CS#1 that he was only storing marijuana for the "old man", but that he needed to start selling

marijuana again. CS#1 told agents that the "old man" received ton quantities of marijuana from the Jarvis Drug Trafficking Organization, and then distributed the marijuana throughout the East Coast. CS#1 identified the "old man" as Geno Berthod of Thornton, Colorado. CS#1 said that the "old man" drove loads of marijuana from Colorado to Indianapolis, Indiana for Chomyn.

10. Law enforcement received information that Geno Berthod ("the old man") was transporting currency from Colorado to New Mexico for the Jarvis Drug Trafficking Organization. On March 25, 2005, a routine traffic stop was conducted on Berthod and his van on I-25 southbound near Castle Rock, Colorado. A narcotics dog, "Zeke", alerted on the van and the money indicating the recent presence of controlled substances on the money and the van. A search of the vehicle revealed a black duffel bag containing $233,830 in U.S. currency. "Zeke" is currently certified in the detection of marijuana, methamphetamine, heroin, cocaine, and "ecstasy". The currency was seized, and Berthod denied any knowledge of the money. Berthod did not contest forfeiture of the currency, and all $233,830 was forfeited in June 2005 as drug proceeds.

11. In July, 2005, Dana Jarvis' calls were intercepted by DEA-Albuquerque, which included calls to and from Dan Chomyn. The calls included discussions about the "old man" and the lost money. In addition, there were discussions about getting "ten units to pay the rent" (believed to be code for marijuana loads).

12. According to the Colorado Department of Labor, there are no records of any legitimate wages for Daniel Chomyn. A check of the Colorado Department of Revenue and the Colorado Secretary of State records do not reveal any business entity associated with or owned by Dan Chomyn.

13. Chomyn maintained defendant US Bank account and moved most if not all of his money through this account. From late 1999-2004 he deposited approximately $750,000.00 into defendant US Bank account.

14. Tax records obtained reveal that Dan Chomyn did file federal tax returns for the years 2000, 2001, 2002, and 2003. The tax returns reveal Schedule C business income for Dan Chomyn. The source of the business income, the name of the business, or any other business identifies are not listed on the return, despite the fact that a tax preparer did appear to prepare each year's returns. Dan Chomyn's taxable income as stated on his returns is as follows:

> 2000 - $53,800.00
> 2001 - $33,402.00
> 2002 - $62,817.00
> 2003 - $56,128.00

a fraction of what has been deposited into defendant US Bank Account.

15. A check of Chomyn's criminal history reveals a Lakewood, Colorado arrest for felony Dangerous Drug Possession and Gambling on April 3, 1997, and a May 3, 1997 Indianapolis, Indiana arrest for controlled substance possession cocaine and marijuana.

## HARRISON AVENUE

16. Daniel Chomyn purchased defendant Harrison Avenue on August 28, 2002 for $374,000.00. The property is encumbered with a Deed of trust in the principal amount of $300,000 for the benefit of Fieldstone Mortgage Company. As detailed above, defendant Harrison Avenue was continuously used by Chomyn to store massive quantities of marijuana and large amounts of drug proceeds. From 1997 to 2004, Stanley Birch purchased approximately 1,000 pounds of marijuana a year from Chomyn. Beginning in 2002 Birch began purchasing

marijuana from Chomyn at his new residence, defendant Harrison Avenue. From 2002 to 2004, CS#1 picked up multiple bulk money shipments for the Jarvis Drug Trafficking Organization at Chomyn's residence (defendant Harrison Avenue).

### BANK ACCOUNTS, INVESTMENT ACCOUNTS AND SAFE DEPOSIT BOX

17. The investigation has revealed that from December 7, 1999 through November 4, 2004, Chomyn had deposited $754,709 into defendant US Bank account. Over half ($434,880.00) of the deposits were in cash. Analysis of the bank records obtained reveals that only a small percentage of the deposits into defendant US Bank account could have come from any legitimate source.

    a. In 2002 and 2003 Chomyn deposited checks from casinos totaling approximately $41,000. Analysis of the records obtained from those casinos reveals that Chomyn is not a big winner and in fact only won approximately $14,000 from the Belagio casino during 1999-2005, $2,300 in 2004 from the Horseshoe Casino, and had a net loss of $460.00 at the Goldstrike casino from 2000-2005. The records of the Goldstrike casino revealed that Chomyn was in fact depositing large amounts of money on account at the casino and then withdrawing it all the next day. On March 30, 2001, in two separate transaction Chomyn deposited $5,000 and $10,000, then on April 1 and 2, 2001, deposited another $5,000 each day for a total of $25,000. On April 2, 2001 in 4 transactions he withdrew the entire amount ($25,000).

    b. Additional analysis of the deposit in defendant US Bank account revealed only a small amount of money being deposited from a possible legitimate business source. From 2000 to 2004 $68,445.00 was deposited into defendant account from a Stephen Tully of Automated

9

Systems Consultants. A check of the Colorado Department of Revenue revealed that Stephen Ray Tully of Greeley, Colorado is the sole proprietor of Automated Systems Consultants. During the entire investigation into the drug activities of Dan Chomyn nothing was uncovered to indicate that Dan Chomyn in any way worked for or with Stephen Ray Tully and/or Automated Systems Consultants explaining the deposits into defendant US Bank account.

    c. In addition to the large cash deposits into defendant US Bank account ($434,880.00), numerous money orders totaling $6,790.00 were deposited into defendant US Bank account. It is a common practice of drug traffickers to pay couriers and receive drug payments in the form of money orders because they are difficult to trace.

    d. On August 4, 2001, Geno Berthod (the "old man"), the known drug trafficker for the Jarvis Drug Trafficking Organization, wrote a $2,500 check to Dan Chomyn, which was deposited into defendant US Bank Account.

    18. Expenses paid by Chomyn from defendant US Bank Account are substantial. Chomyn has paid mortgage payments for defendant Harrison Avenue totaling approximately $49,000.0. Despite owning real property, Dan Chomyn during 2000, 2001, and 2002 was paying rent on a residence in Boulder totaling another $47,950.00. In addition Dan Chomyn has paid from 2000 to 2004 over $150,000 to his ex-wife in maintenance payments. At least $31,200 in credit card payments have been paid from defendant US Bank Account. On August 23, 2002, Dan Chomyn withdrew from defendant US Bank Account $39,684.64 in cash.

    19. Beginning in 1999 Dan Chomyn caused money to be transferred either by check or electronic wire from defendant US Bank Account to defendant Janus Account. Records obtained revealed that from 1999 to 2004 $72,498.00 was transferred from defendant US Bank

Account directly to defendant Janus Accounts.

20. In 2003, Dan Chomyn transferred $10,000.00 from defendant US Bank Account to defendant T.D. Waterhouse Account.

21. Dan Chomyn pays for a Safe Deposit Box at US Bank in Denver, Colorado (defendant Safe Deposit Box). Analysis of the bank records of defendant US Bank revealed that Dan Chomyn wrote multiple checks totaling $9,000 to Private Issue, indicating some type of private issue collectable such as baseball cards, figurines, etc. In addition Dan Chomyn withdrew almost $40,000 in cash from defendant US Bank Account. The cash, the collectibles, or other items of value constituting the proceeds of Chomyn's illegal drug business are likely to be hidden in defendant Safe Deposit Box.

## SUMMARY

22. Based on the foregoing information Chomyn is a drug dealer and money trafficker for the Jarvis Drug Trafficking Organization. He has had little or no known legitimate income, yet has amassed nearly three quarters of a million dollars, which was deposited into defendant US Bank Account and then transferred to the other defendant assets. All defendant assets are thus the proceeds of Chomyn's illegal drug trafficking and involved in the money laundering of his drug proceeds.

## VERIFICATION OF KENNETH R. VALDEZ SPECIAL AGENT
## INTERNAL REVENUE SERVICE - CRIMINAL INVESTIGATION DIVISION

I, Special Agent Kenneth R. Valdez, hereby state and aver that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

                                              s/ Kenneth R. Valdez
                                              Kenneth R. Valdez

STATE OF COLORADO        )
                                      )ss
CITY AND COUNTY OF DENVER)

The foregoing was acknowledged before me this 24th day of August, 2005, by Kenneth R. Valdez, Special Agent, Internal Revenue Service - Criminal Investigation Division.

                                              s/ Pamela S. Jebens
                                              Notary Public

My Commission Expires: 2-2-2008

## FIRST CLAIM FOR RELIEF

23.    The Plaintiff repeats and incorporates by reference the paragraphs above.

24.    By the foregoing and other acts, defendant Harrison Avenue constitutes property used or intended for use as a container for controlled substances, in violation of 21 U.S.C. §801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. §881(a)(3).

## SECOND CLAIM FOR RELIEF

25.    The Plaintiff repeats and incorporates by reference the paragraphs above.

26.    By the foregoing and other acts, defendant Harrison Avenue constitutes property

used or intended to be used in any manner or part to commit, or to facilitate the commission of violations of 21 U.S.C. §801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. §881(a)(7).

### THIRD CLAIM FOR RELIEF

27. The Plaintiff repeats and incorporates by reference the paragraphs above.

28. By the foregoing and other acts defendant Harrison Avenue constitutes proceeds of and is traceable to the exchange for controlled substances in violation of 21 U.S.C. §801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. §881(a)(6).

### FOURTH CLAIM FOR RELIEF

29. The Plaintiff repeats and incorporates by reference the paragraphs above.

30. By the foregoing and other acts, defendant US Bank Account constitutes proceeds of and is traceable to the exchange for controlled substances in violation of 21 U.S.C. §801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. §881(a)(6).

### FIFTH CLAIM FOR RELIEF

31. The Plaintiff repeats and incorporates by reference the paragraphs above.

32. By the foregoing and other acts, defendant US Bank Account was involved in and traceable to transactions and attempted transactions in violation of 18 U.S.C. §1956, and thus is forfeited to the United States pursuant to 18 U.S.C. §981(a)(1)(A).

### SIXTH CLAIM FOR RELIEF

33. The Plaintiff repeats and incorporates by reference the paragraph above.

34. By the foregoing and other acts, defendant US Bank Safe Deposit Box constitutes proceeds of and is traceable to the exchange for controlled substances in violation of 21 U.S.C.

§801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. §881(a)(6).

### SEVENTH CLAIM FOR RELIEF

35. The Plaintiff repeats and incorporates by reference the paragraphs above.

36. By the foregoing and other acts, defendant Janus Accounts constitute proceeds of and is traceable to the exchange for controlled substances in violation of 21 U.S.C. §801, et seq., and therefore, are forfeited to the United States pursuant to 21 U.S.C. §881(a)(6).

### EIGHTH CLAIM FOR RELIEF

37. The Plaintiff repeats and incorporates by reference the paragraphs above.

38. By the foregoing and other acts, defendant Janus Accounts were involved in and traceable to transactions and attempted transactions in violation of 18 U.S.C. §1956, and thus are forfeited to the United States pursuant to 18 U.S.C. §981(a)(1)(A).

### NINTH CLAIM FOR RELIEF

39. The Plaintiff repeats and incorporates by reference the paragraphs above.

40. By the foregoing and other acts, defendant T.D. Waterhouse Account constitutes proceeds of and is traceable to the exchange for controlled substances in violation of 21 U.S.C. §801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. §881(a)(6).

### TENTH CLAIM FOR RELIEF

41. The Plaintiff repeats and incorporates by reference the paragraphs above.

42. By the foregoing and other acts, defendant T.D. Waterhouse Account was involved in and traceable to transactions and attempted transactions in violation of 18 U.S.C. §1956, and thus is forfeited to the United States pursuant to 18 U.S.C. §981(a)(1)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the

defendants Harrison Avenue, US Bank Account, US Bank safe deposit box, Janus Accounts, and T.D. Waterhouse Account in favor of the United States, and that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

Dated this 24th day of August, 2005.

                                          Respectfully submitted,

                                          WILLIAM J. LEONE
                                          United States Attorney

                                          By:  s/ James S. Russell
                                          James S. Russell
                                          Assistant United States Attorney
                                          1225 Seventeenth Street, Ste. 700
                                          Denver, Colorado 80202
                                          Telephone (303) 454-0100
                                          FAX: (303) 454-0402
                                          E-mail: James.Russell2@usdoj.gov
                                          Attorney for Plaintiff